IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEONARD LUCERO,

       Plaintiff,

v.                                              20-cv-1238 MV/JHR

TRAVELERS COMMERCIAL
INSURANCE COMPANY,

       Defendant.


**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on Travelers Commercial Insurance Company's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 11].   The Court, having considered the Motion and relevant law, finds that the Motion is well-taken and will be granted, although Mr. Lucero will be given an opportunity to file a motion seeking leave to amend.

**BACKGROUND**

Plaintiff Leonard Lucero purchased homeowner's insurance coverage from Defendant Travelers Commercial Insurance Company ("Travelers").   Doc. 1-1 ¶ 5.   Travelers issued and delivered to Mr. Lucero an insurance policy (the "Policy"), which remained in effect through the relevant period.   *Id.* ¶ 7.   The Policy contained a notice provision that "stipulate[d] that all wind and hail claims must be submitted within one year of the date of loss."   *Id.* ¶ 16.   The Policy also contained the following "time-to-sue provision": "**Suit Against Us.**   No action can be brought against us unless there has been full compliance with all of the terms under Section I

1

of this policy and the action is started within two years after the date of loss."   Doc. 11 Ex. 1 ¶ 9; Doc. 11 Ex. 2 ¶ 9.

On or about July 30, 2018, the roof of Mr. Lucero's home was damaged by a hailstorm. Doc. 1-1 ¶ 9.   Mr. Lucero, who is disabled and restricted to a wheelchair, did not know about the hailstorm damage until early July 2019, when a friend serviced his air conditioners and observed the roof damage.   *Id.* ¶ 11.   By early July 2019, Mr. Lucero notified Travelers of the roof damage and made a claim under the Policy.   *Id.* ¶ 13.   On July 24, 2019, Travelers inspected the roof and confirmed that there was extensive damage caused by hail.   *Id.* ¶ 14.

On July 26, 2019, Travelers communicated to Mr. Lucero in writing and orally that they would provide no coverage for his claim.   Doc 1-1 Ex. 2.   Thereafter, in a letter dated September 17, 2019, Travelers explained that "while hail was present on July 30, 2018, it was three miles from the insured location, and hail large enough to register on the report did not fall at the loss location."   *Id*.   Based on this information, in conjunction with its "physical inspection of the property," Travelers determined that the hail damage to Mr. Lucero's home "was older, and in line with" a storm that occurred on May 24, 2018.   *Id*.   Accordingly, Travelers "changed the date of loss on the claim and paperwork" to reflect that the hail damage to Mr. Lucero's home occurred on May 24, 2018, rather than on July 30, 2018.   Doc. 1-1 ¶ 16. And because Mr. Lucero filed his claim more than one year after May 24, 2018, Travelers denied his claim as untimely under the Policy's one-year notice provision.   *Id.* ¶ 18.

As a result of Travelers' denial of his claim, Mr. Lucero commenced the instant action in state court on August 27, 2020.   Travelers removed the action to this Court on November 27, 2020.   Doc. 1.   In his Complaint for Declaratory Judgment and Damages for Breach of Contract, Insurance Bad Faith, Negligence and Unfair Trade and Insurance Practices, Mr. Lucero

asserts claims for declaratory judgment (Count I), breach of contract (Count II), bad faith, violation of New Mexico Insurance Code and Unfair Practices Act (Count III), and negligence (Count IV).   Doc. 1-1.   Travelers has filed a motion to dismiss the Complaint in its entirety, which is now before the Court.

## STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss.   *Id.*   First, "the tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.   "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible").   Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

## DISCUSSION

On the instant motion to dismiss, Travelers argues that Mr. Lucero's breach of contract claim, first raised when he commenced the instant action on August 27, 2020, is prohibited by the time-to-sue provision in the Policy, as it required him to bring any suit against Travelers within two years of the date of loss, or no later than July 30, 2020.   Travelers further argues that the remainder of Mr. Lucero's claims must also be dismissed, because they are predicated on the alleged breach and because they fail to adequately state a claim upon which relief can be granted.

I.      Breach of Contract Claim

        In the Complaint, Mr. Lucero argues that Travelers breached the Policy by "failing and

refusing to pay for the damage to [his] home, including the roof damage, caused by the

hailstorm."   Doc. 1 ¶¶ 33-34.   Invoking the time-to-sue provision of the Policy, which requires

that an action be brought within two years after the date of loss, Travelers argues that Mr.

Lucero's breach of contract claim is time-barred, and thus subject to dismissal, because he filed

it more than two years after the alleged date of the hail damage to his home.   Doc. 11 at 4-6.

Mr. Lucero acknowledges that his claim is untimely under the time-to-sue provision.   He

contends, however, that his claim is not subject to dismissal because, by running from the date of

loss rather than from the date of the alleged breach of contract, the time-to-sue provision is

"unreasonable and unenforceable as a matter of [New Mexico] law."   Doc. 15 at 3.   And

because the time-to-sue provision is unenforceable, Mr. Lucero's argument continues, the six-

year statute of limitations applicable to breach of contract actions controls, under which his claim

is timely.   *Id.*

        In support of his contention, Mr. Lucero cites to *Whelan v. State Farm Mut. Auto. Ins.*

*Co.*, 329 P.3d 646 (N.M. 2014), in which the New Mexico Supreme Court addressed the validity

of an automobile insurance contract time-to-sue provision that required an uninsured

motorist/underinsured motorist ("UM/UIM") claim to be made within six years from the date of

the accident.   The Court explained that "[w]hile the lengthy six-year period" was "itself

unobjectionable, it is the triggering event, the date of the accident instead of the date of the

accrual of the cause of action, that concerns us."   *Id.* at 650.   The Court ultimately held that the

time-to-sue provision ran counter to the public policy behind the UM/UIM statute, stating:

"[a]ddressing only the issue that is before us, we must conclude that a time-to-sue provision in a

UM/UIM contract that is triggered solely by the date of an accident is unreasonable and unenforceable." *Id.* at 651.

In *Whelan*, the Court was ruling on the enforceability of a time-to-sue provision in the specific context of a UM/UIM insurance policy. Accordingly, *Whelan* "is not automatically dispositive of the issue before this Court," namely, whether a time-to-sue provision in a homeowner's insurance policy is unreasonable and enforceable when the triggering event is the date of loss to property. *Miller v. Cincinnati Ins. Co.*, 323 F. Supp. 3d 1253, 1261 (D.N.M. 2018).

As this case arises under diversity jurisdiction, "the Court's task is not to reach its own judgment regarding the state law at issue, but simply to 'ascertain and apply the state law.'" *Id.* at 1259 (quoting *Wade v. EMACASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007)). Where, as here, "no controlling law exists, the federal court must endeavor to predict what the state's highest court would do if it were faced with the same facts and issues." *Id.* at 1259 (citing *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)). "In making that prediction, a court considers 'analogous decisions by the [state] Supreme Court, the decisions of the lower courts in [the state], the decisions of the federal courts and of other state courts.'" *Id.* (quoting *Phillips v. State Farm Mut. Auto. Ins. Co.*, 73 F.3d 1535, 1537 (10th Cir. 1996)).

Accordingly, the issue before the Court is whether the New Mexico Supreme Court would extend its holding in *Whelan* to the facts of this case. As set forth herein, based on its review of New Mexico law and analogous decisions of federal courts and other state courts, the Court concludes that the New Mexico Supreme Court would not extend *Whelan* to invalidate the time-to-sue provision in the Policy. Instead, that Court would enforce the time-to-sue provision

and find that Mr. Lucero's breach of contract claim is time-barred.

New Mexico "courts consistently have held that contractual limitations on actions, including time-to-sue provisions, will be enforced unless they violate public policy." *State ex. rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 779 (1991).   Notably, "[i]n New Mexico, provisions in insurance policies which limit the period within which suit may be brought *after damage occurs* are valid and enforceable if the time period is reasonable."   *Young v. Seven Bar Flying Serv., Inc.*, 685 P.2d 953, 955 (N.M. 1984) (emphasis added).   Accordingly, New Mexico Courts routinely have upheld time-to-sue provisions that, like the one here, run from the date of loss or damage.   *See Green v. General Accident Ins. Co. of Am.*, 746 P.2d 152 (N.M. 1987) (upholding 12-month time-to-sue provision in homeowner's policy where triggering event was date of theft of property); *Sanchez v. Kemper Ins. Cos.*, 632 P.2d 343, 345 (N.M. 1981) (upholding one-year time-to-sue provision in individual's insurance policy where triggering event was date of loss to property); *Peoples State Bank v. Ohio Cas. Ins. Co.*, 635 P.2d 306 (N.M. 1981) (holding that insurer made prima face showing for summary judgment where insured failed to institute suit within one year from date of loss to property caused by rainstorm, as required by policy); *Wiseman v. Arrow Freightways, Inc.*, 552 P.2d 1240 (N.M. Ct. App. 1976) (upholding time-to-sue provision in livestock transportation policy where triggering event was 12 months after loss to property).

The expressed rationale for enforcing time-to-sue provisions is that a "party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions."   *Udall*, 812 P.2d at 780.   "Under such circumstances, the important public policy of freedom of contract mandate[s] enforcement of the bargained-for-time-to sue provision."   *City of Santa Fe v. Travelers Cas. & Sur. Co.*, 228 P.3d

7

483, 485 (N.M. 2010).   This is true regardless of whether a party "negotiate[s] actively over the provisions," as "the limitations on the right to sue were part of the agreement and represented an element of the consideration."   *Udall*, 812 P.2d at 781.

Indeed, the New Mexico Supreme Court has found that "time-to-sue provisions advance [several] public policy considerations."   *Sanchez*, 632 P.2d at 345.   Those considerations include avoiding "uncertainty as to the amount of [the insurer's] liability," decreasing "the possibility of fraudulent claims," ensuring the "prompt assertion of legal claims," and allowing "stale claims to be cut off."   *Id.*; *see also Udall*, 812 P.2d at 780-81 (reaffirming policy reasons for time-to-sue-provisions articulated in *Sanchez*).   Accordingly, in the absence of a public policy reason that would make "adherence to the [] principle of freedom to contract" questionable, *City of Santa Fe*, 228 P.3d at 485, "where the insurer raises the affirmative defense of violation of a time-to-sue provision, it need not show that it was prejudiced by violation of the provision.   It need only show the breach."   *Sanchez*, 632 P.2d at 345.[1]

---

[1] In *Roberts Oil Co., Inc. v. Transamerica Ins. Co.*, the New Mexico Supreme Court indicated that the distinction in *Sanchez* between a time-to-sue limitation provision, which is enforceable without any showing of prejudice by the insurer, and a "notice clause," which requires a showing of prejudice by the insurer before it will be enforced, "is now open to serious question."   833 P.2d 222, 229 (N.M. 1992).   Nonetheless, the New Mexico Supreme Court has never overruled *Sanchez* or otherwise reversed course on the enforceability of a time-to-sue provision based merely on a showing of breach.   Indeed, in *City of Santa Fe*, the New Mexico Supreme Court specifically cited *Udall* for the proposition that, where a time-to-sue provision is part of a contract to which the parties have agreed, that provision will be enforced.   228 P.3d at 485. Further, years after *Roberts Oil* was decided*,* the Tenth Circuit specifically noted that New Mexico, in keeping with most courts around the country, does "not require an insurer show prejudice to enforce a suit-limitation provision," and cited *Sanchez* in support.   *B.S.C. Holding, Inc. v Lexington Ins. Co.*, 625 F. App'x 906, 910-11 (10th Cir. 2015).   Accordingly, this Court finds no reason to question the precedential value of *Sanchez* and its progeny in predicting how the New Mexico Supreme Court would analyze the instant case.   Another court in this district reached the opposite conclusion in *Durante v. American States Ins. Co.*, No. 99-cv-1179, 2000 WL 36739969 (D.N.M. Apr. 12, 2000).   For the reasons discussed in this footnote, the Court respectfully disagrees with the conclusion reached in *Durante*.

Under this precedent, Mr. Lucero's untimely claim is barred by the Policy, unless he advances a specific "public policy reason why the 'time to sue' provision should not be enforced." *Wiseman*, 552 P.2d at 1242. This he has not done. Mr. Lucero's entire argument is premised on the theory that "time-to-sue provisions which purport to begin before the cause of action has accrued are unreasonable and unenforceable as a matter of law." Doc. 15 at 14. This is a misstatement of New Mexico law; as explained above, New Mexico courts consistently uphold time-to-sue provisions – including those where the triggering event is the date of loss rather than the date of breach of contract – so long as they do not violate public policy. Mr. Lucero thus advances no public policy reason other than the perceived unfairness of basing an insured's time to sue on the date of loss rather than the date of breach. But by upholding time-to-sue provisions that run from the date of loss, the New Mexico courts have made clear that, to successfully advocate for the invalidation of a time-to-sue provision, an insured must advance a reason other than and in addition to the provision's use of the date of loss as the triggering event for commencing suit. It follows that, under New Mexico law, the potential unfairness of a date-of-loss triggering event does not raise the specter of a public policy concern sufficient to outweigh "the countervailing principle of freedom to contract." *City of Santa Fe*, 228 P.3d at 485.

Indeed, the only concrete concern that Mr. Lucero articulates is that "Travelers could have waited a few more months until two years after the loss expired to deny the claim and Mr. Lucero would have no remedy whatsoever for breach of contract." Doc. 15 at 11. But this concern is obviated by the doctrines of waiver and estoppel, which "mitigate the harsh results of enforcing suit limitation clauses." *JLD Props. of St. Albans, LLC v. Patriot Ins. Co.*, No. 20-cv-134, 2021 WL 2077952, at *3 (D. Vt. May 21, 2021). Under New Mexico law, an "insurer

may be estopped from raising the affirmative defense of a time-to-sue provision."   *Green*, 746

P.2d at 154.    "Estoppel arises when an individual has been induced by the conduct of another to

do, or forbear from doing, something he would or would not have done but for such conduct."

*Id.*    "The acts and conduct generally held to constitute a waiver of a time-to-sue provision are

those acts which would lull the insured into reasonably believing that its claim would be settled

without suit."   *Id.*    Accordingly, if Travelers had, as Mr. Lucero theorizes, waited until a few

months after expiration of the contractual limitations period to deny Mr. Lucero's claim,

Travelers would be estopped from asserting its time-to-sue defense.    *See Presbyterian*

*Healthcare Servs. v. Factory Mut. Ins. Co.*, 512 F. Supp. 3d 1169, 1177 (D.N.M. 2021).

Notably, there are no allegations in the Complaint that, if proven, would show that

Travelers engaged in conduct that would have lulled Mr. Lucero into reasonably believing that

his claim would be settled without suit, or that any of Travelers' communications would have

induced him to wait until after the limitations period ran before filing the instant action.    To the

contrary, Travelers inspected the property on July 24, 2019, within weeks of first receiving

notice of the hail damage from Mr. Lucero; two days later, on July 26, 2019, Travelers notified

Mr. Lucero of its decision to reject his claim.    That decision was memorialized in a letter to Mr.

Lucero dated September 17, 2019.    Accepting as true that the hail damage occurred on July 30,

2018, once he received the September 2019 letter, there were still 10 months of the contractual

limitations period remaining for Mr. Lucero to file suit.    Travelers' denial of coverage was

undisputedly clear and final; there are no facts alleged to suggest that, at any point following its

inspection or its letter denying his claim, Travelers indicated that it was willing to continue its

investigation, negotiate, or pay any portion of Mr. Lucero's claim.    Accordingly, the allegations

here do not reflect that Mr. Lucero was induced by Travelers' conduct to forbear from filing his

breach of contract claim within the contractual limitations period.    It follows that, based on the facts as alleged in the Complaint, New Mexico courts would not find that Travelers waived its time-to-sue defense.

Nor does Mr. Lucero's citation to *Whelan* save his argument.    As noted above, the New Mexico Supreme Court in *Whelan* decided "the reasonableness and enforceability of a limitations clause" that barred enforcement of UM/UIM coverage six years after an accident. 329 P.3d at 649.    A careful reading of *Whelan* reveals that its context – a suit over an insurer's alleged refusal to honor its UM/UIM obligations – was crucial to the Court's decision.    Indeed, before undertaking it decision, the Court explained that it first had to "consider the right that is being limited."    *Id.*    The Court went on to discuss the purpose of the UM/UIM statute, namely, "to protect individual members of the public against the hazard of culpable uninsured motorists." *Id.* (citation omitted).    The Court then discussed in detail *Brooks v. State Farm Ins. Co,* 154 P.3d 697 (N.M. Ct. App. 2007), in which the New Mexico Court of Appeals "rejected an insurer's argument that an insured's UM/UIM cause of action against an insurer accrues on the date of the underlying accident, holding that the claim is based on an alleged breach of the insurance contract and therefore accrues after the insurer refuses to pay the claim."    *Whelan*, 329 P.3d at 649.

The reasoning of the *Brooks* court was based on the practicalities of a UIM/UM claim, namely, that "the extent of a tortfeasor's underinsured status and the insurer's liability for that amount may not be immediately apparent to the innocent insured."    154 P.3d at 702. Specifically, the court explained, "the insured may not have the necessary information to know that his or her injuries, medical expenses, or possible punitive damages will exceed the tortfeasor's available coverage or assets or the insured's UIM coverage."    *Id.*    Thus, the

11

*Brooks* court "agree[d] with other courts that find it 'fundamentally unfair' to time bar an insured from compensation that was bargained for because an insured may not be aware until sometime after the accident that a claim against her underinsured motorist insurer must be pursued."   *Id.* Thus, *Brooks* stands for the proposition, reiterated in *Whelan*, that "as a practical matter, the date of accident is particularly extraneous to actions for specific performance of a contract to arbitrate involving UIM coverage."   *Brooks*, 154 P.3d at 702; *Whelan*, 329 P.3d at 649.

Before reaching its ultimate decision, the Court in *Whelan* reiterated its prior holding that courts generally "will enforce contractual time limitation provisions" so long as the limitations period is reasonable and not in conflict with public policy.   329 P.3d at 650.   The Court specifically noted that "[t]ime limitations in the insurance contract serve multiple purposes," and that, in the context of UM/UIM coverage disputes, its "jurisprudence" reflects a balancing between the public policy interests in "permitting private contractual relations between parties," on the one hand, and the "broad intent of the UM/UIM statute," on the other hand.   *Id.* Ultimately, the Court determined that the balance tips in favor of "the public policy concerns embodied in the state's UM/UIM statute," and, for this reason, a time-to-sue provision in a UM/UIM contract triggered solely by the date of an accident "impermissibly restricts UM/UIM coverage."   *Id.* at 651 (quoting *Am. States Ins. Co. v. LaFlam*, 69 A.3d 831, 845 (R.I. 2014)). Clarifying that it was "[a]ddressing only the issue" before it, the Court concluded that the time-to-sue provision at issue was "unreasonable and unenforceable."   *Whelan*, 329 P.3d at 651.

Thus "firmly rooted in the public policy underlying the state's UM/UIM statute," *Whelan* provides no indication that the New Mexico Supreme Court would extend its holding to invalidate the time-to-sue provision in the homeowner's policy at issue here.   Travelers' refusal to cover hail damage to Mr. Lucero's home does not implicate, much less frustrate, the public

12

policy underlying New Mexico's UM/UIM statute.   *Epic Energy LLC. v. Encana Oil & Gas (USA) Inc.*, No. 19-cv-131, 2019 WL 4303325, at *6 (D.N.M. Sept. 11, 2019).   Indeed, there would be no reasoned basis to do so, as there are no "practical matters" that would render it fundamentally unfair to enforce the time-to-sue provision in the Policy.   In contrast to the nature of a UM/UIM claim, where the date of the accident does not necessarily correspond to the date on which the insured "should have discovered[,] in the exercise of reasonable diligence, the facts that underlie his or her claim," *Brooks,* 154 P.3d at 701, the "nature of the loss" here was such that Mr. Lucero reasonably should have ascertained his "rights under the [P]olicy on the date of loss or soon thereafter."   *Collins v. State Farm. Fire & Cas. Co*, No. 13-cv-237, 2014 WL 7152725, at *2 (E.D. Ky. Dec. 15, 2014).   Unlike a motorist who may not be aware until sometime after an accident that a claim against his or her UM/UIM insurer must be pursued, a homeowner can discover, in the exercise of reasonable diligence, the property damage that underlies his or claim well within a two-year limitations period.

This Court thus predicts that here, where the policy concerns underlying UM/UIM contracts are inapplicable, no other policy concerns have been identified to counterbalance the strong public policy of freedom of contract, and there are no practical matters that would render it unfair to tie Mr. Lucero's cause of action to the date of loss, the New Mexico courts would adhere to the principle of freedom of contract and enforce the time-to-sue provision in the Policy. *Accord Epic Energy*, 2019 WL 4303325, at *7 (rejecting insured's argument that *Whelan's* reasoning should be applied to a purchase and sale agreement because the public policy underlying UM/UIM statutes had no bearing on the agreement, and concluding that New Mexico courts "would likely allow the survival clause at issue" because it "help[ed] define the parties' liability . . . encourage[d] the prompt assertion of lawsuits based on the clause, and protect[ed]

against stale claims"); *Raja v. Ohio Sec. Ins. Co.*, 305 F. Supp. 3d 1206, 1248 n.16 (D.N.M. 2018) (concluding that New Mexico Supreme Court would likely decline to extend *Whelan* to a contract relating to commercial property damage, in large part because the policy concerns underlying UM/UIM contracts are inapplicable in the context of a commercial property insurance contract); *Collins*, 2014 WL 7152725, at *2 (in rejecting insured's argument that one-year limitations period in homeowner's policy was unreasonable, court found inapposite case concluding that it would be unfair to allow accrual date for UIM breach of contract claim to run from date of accident); *Barjuca v. State Farm Fire & Cas. Co.*, 11-cv-380, 2013 WL 6631999 (E.D. Ky. Dec. 17, 2013) (finding reasoning of a case that "involve[d] [UM/UIM] coverage, not a homeowner's policy" inapplicable, and concluding that "the one-year contractual limitations period" in homeowner's insurance policy at issue was reasonable).   It follows that, under the time-to-sue provision in the Policy, this Court is constrained to find that Mr. Lucero's breach of contract claim is barred and for that reason, must be dismissed.

In reaching this decision, the Court notes that it is not without sympathy for Mr. Lucero, especially as to his initial failure to file his claim within the one-year notice provision of the Policy – a failure occasioned by the fact that he quite simply, and perhaps understandably, did not know about the damage any sooner.   Unfortunately, however, it is the time-to-sue provision of the Policy, rather than the notice provision of the Policy, that is determinative.   As explained above, Travelers initially rejected Mr. Lucero's claim on the basis that he did not comply with the notice provision of the policy, because he did not make his claim within one year of the hailstorm.   But Travelers generally would not be able to enforce that notice provision without first showing that it was prejudiced by Mr. Lucero's late notice.   Accordingly, if Mr. Lucero had timely filed the instant action, this Court would not dismiss Mr. Lucero's claim simply

14

because he failed to give notice to Travelers before the one-year deadline; rather, the Court would allow Mr. Lucero's claim to proceed unless Travelers were able to meet its burden of establishing prejudice by the late notice.   Unfortunately, however, Mr. Lucero did not file the instant case in compliance with the Policy's two-year time-to-sue provision.   And because the Court predicts that New Mexico courts would enforce the time-to-sue provision under the circumstances here, the Court is unable to reach the issue of whether Travelers' denial of benefits based on Mr. Lucero's late notice was proper.

II.   <u>Declaratory Judgment</u>

In Count I, Mr. Lucero asks the Court to determine and declare that, at the time of the hailstorm, the Policy was "in effect and provided coverage for all damages arising out of the 2018 hailstorm."   Doc. 1-1 p. 5.   "Because declaratory judgment acts are procedural rules, federal law determines whether a district court may properly enter a declaratory judgment in a diversity case."   *Vanterpool v. Federation of Chiropractic Licensing Board*, No. 22-cv-1208, 2022 WL 16635391, at *8 no.10 (D. Colo. Nov. 2, 2022).   "The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty."   *Id.* at *8 (quoting *United States v. Fisher-Otis Co.*, 496 F.3d 1146, 1151 (10th Cir. 1974)).

Mr. Lucero's claim for declaratory judgment incorporates by reference the "facts common to all counts," and contains no additional or independent factual allegations in support. Doc. 1-1 ¶ 19.   In effect, Mr. Lucero's "declaratory judgment claim simply seeks to determine [his]contractual rights."   *Vanterpool*, 2022 WL 16635391, at *8.   As discussed above, however, Mr. Lucero is time-barred from enforcing his rights under the Policy.   Having determined that it must rule against Mr. Lucero on his breach of contract claim, thus "necessarily

15

resolving all issues identified in [his] declaratory judgment claim," the Court also will dismiss

Mr. Lucero's claim for declaratory judgment.   *Café Plaza de Mesilla Inc. v. Continental Cas.*

*Co.*, 519 F. Supp. 3d 1006, 1016 (D.N.M. 2021); *see also Vanterpool*, 2022 WL 16635391, at *8

(dismissing declaratory judgment claim where plaintiff had not plausibly alleged breach of

contract claim).

III.    <u>Bad Faith, Violation of New Mexico Insurance Code and Unfair Practices Act</u>

Count III is an amalgam of three separate claims: a bad faith claim, a New Mexico Unfair

Insurance Practices Act ("NMUIPA") claim, and a New Mexico Unfair Practices Act

("NMUPA") claim.   It is unclear whether New Mexico courts would find that the time-to-sue

provision in the Policy forecloses Mr. Lucero's ability to pursue any of these claims.   The Court

need not decide this issue, however, because each of these claims fails for independent reasons.

A.    <u>Bad Faith Claim</u>

In support of his bad faith claim, Mr. Lucero argues that Travelers' "failure and refusal to

provide coverage for the hailstorm was unfounded, unreasonable and in bad faith."   Doc. 1-1 ¶

42.   Under New Mexico law, however, "claims of bad faith to pay 'cannot arise unless there is a

contractual duty to pay under the policy.'"   *Albuquerque Ambulatory Eye Surgery Ctr. LLC v.*

*Transp. Ins. Co.*, 566 F. Supp. 3d 1178, 1196 (D.N.M. 2021) (quoting *Haygood v. United Servs.*

*Auto. Ass'n*, 453 P.3d 1235, 1241 (N.M. Ct. App. 2019)); *see also OR&L Constr., L.P. v.*

*Mountain States Mut. Cas. Co.*, 514 P.3d 40, 51 (N.M. Ct. App. 2002) ("[A]n insured cannot

raise a claim of bad faith based on an insurer's failure to pay a covered claim unless the insured

can establish that coverage exists.").   Admittedly, the New Mexico Court of Appeals has held

that "a bad faith claim need not depend on the existence of coverage."   *Haygood*, 453 P.3d at

1242.   Accordingly, "if bad faith is asserted as to conduct beyond a denial of coverage and the

refusal to pay, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Albuquerque Ambulatory Eye Surgery Ctr.*, 566 F. Supp. 3d at 1196 (citing *Haygood*, 453 P.3d at 1242).

Here, however, Mr. Lucero grounds his bad faith claim in Travelers' "failure and refusal to provide coverage." Doc. 1-1 ¶ 42. The Complaint includes no allegations, plausible or otherwise, that Travelers "failed to deal fairly in handling the claim, failed to conduct a fair investigation, or failed to fairly evaluate coverage." *Hay*, 453 P.3d at 1242. Accordingly, the only theory of bad faith articulated in the Complaint is that Travelers "exhibited bad faith in failing to pay a covered claim." *Id.* "This theory is unavailing," as the Court has determined that Mr. Lucero's breach of contract claim cannot survive. *Id.* Thus, because Mr. Lucero's bad faith claim as alleged in the Complaint depends "on the existence of coverage," this Court must dismiss it. *Id.*

B.   NMUIPA Claim

In a one-sentence paragraph, Mr. Lucero alleges that Travelers "failed to abide by its statutory duties under the New Mexico Insurance Code." Doc. 1-1 ¶ 44. Although it is not clear from the Complaint whether the paragraph immediately following is meant to support this allegation, Mr. Lucero goes on to make the following conclusory allegations:

> Travelers [] misrepresented the benefits of the Policy sold and provided to Leonard Lucero, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; misrepresented material facts in connection with Leonard Lucero's requests for insurance coverage; and failed to follow Travelers['] own customary practices and procedures.

*Id.* ¶ 45.

The NMUIPA enumerates 15 practices that, "with respect to claims, by an insurer or

17

other person, knowingly committed or performed with such frequency as to indicate a general

business practice, are defined as unfair and deceptive practices and are prohibited."   N.M. Stat.

Ann. § 59A-16-20.   The above-quoted allegations in the Complaint do not track any of the

enumerated unfair practices, although Section 59-A-16-20(A) does prohibit "misrepresenting to

insureds pertinent facts or policy provisions relating to coverages at issue."

In any event, even an accurate recitation of the statutory language of Section 59A-16-20

would not be sufficient to state an NMUIPA claim.   Mr. Lucero "does not allege facts in the

Complaint regarding any of the [enumerated] unfair practices."   *Albuquerque Ambulatory Eye*

*Surgery*, 566 F. Supp. 3d at 1197.   Indeed, the Complaint "makes no factual allegations that

[Travelers] misrepresented the terms of the [P]olicy."   *Id.*   Nor does the Complaint "allege that

these acts occurred 'with such frequency as to indicate a general business practice.'"   *Id.*   Mr.

Lucero simply "does not provide any factual allegations in support of [his] claim."   *Id.*   His

vague recitation of unidentified misrepresentations and failures, untethered to any factual

allegations regarding any of the unfair practices enumerated in the NMUIPA, is insufficient to

state a claim.   Accordingly, Mr. Lucero's NMUIPA claim must be dismissed.

C.   NMUPA Claim

In another one-sentence paragraph, Mr. Lucero alleges that Travelers "failed to abide by

its statutory duties under the New Mexico Unfair Practices Act."   Doc. 1-1 ¶ 46.   Again,

although it is not clear from the Complaint whether the paragraph immediately following is

meant to support this allegation, Mr. Lucero goes on to make the following conclusory

allegations:

> Travelers . . . committed unfair claims practices, unfair trade practices in the sale
> and provision of insurance to Leonard Lucero, including representing that the
> insurance had benefits or qualities that it did not have; representing that the
> insurance was of a particular standard or quality; failing to state material facts

18

which tended to deceive the Policyholder; failing to deliver the quality or quantity of insurance coverage contracted for; and failing to follow Travelers['] own customary practice and procedures.

*Id.* ¶ 47.

The NMUPA makes "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce" unlawful.   N.M. Stat. Ann. § 57-12-3.   To state a claim under the NMUPA, a plaintiff must allege the following:

> (1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person.

*Albuquerque Ambulatory Eye Surgery*, 556 F. Supp. 3d at 1198 (quoting *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007); *Lohman v. Daimler-Crysler Corp.*, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007)).

Here, the Complaint "does not identify which statement or statements at issue are false or misleading."   *Albuquerque Ambulatory Eye Surgery*, 556 F. Supp. 3d at 1198.   Indeed, the Complaint fails to identify *any* statements at all made by anyone at Travelers to Mr. Lucero. Nor does the Complaint allege facts "to show that such [unidentified] misrepresentation may or tends to deceive or mislead any person," or that any "such conduct occurred in the regular course of [Travelers'] business."   *Id.*   The absence of specific factual allegations to support his NMUPA claim warrants dismissal of that claim.

IV.   <u>Negligence</u>

In Count IV, Mr. Lucero asserts a claim of negligence, alleging that, in rejecting his claim for damage caused by the 2018 hailstorm, Travelers "negligently failed to provide the insurance coverage which was requested and reasonably expected by its insured."   Doc. 1-1 ¶

54.     Under New Mexico law, however, an insured cannot assert an independent claim of negligence against an insurer.   *Fava v. Liberty Mut. Ins. Corp.*, No. 17-cv-456, 2019 WL 133269, at *7 (D.N.M. Jan. 8, 2019); *see also Grasshopper Natural Medicine v. Hartford Cas. Ins. Co.*, No. 15-cv-338, 2016 WL 4009834, at * (D.N.M. July 7, 2016) ("[W]hile Grasshopper's assertions *may* provide a basis for their claim for bad faith, their allegations do not – and cannot – state a claim for negligence upon which relief can be granted.").   While negligence is "an element" of "bad faith and statutory claims," it "cannot be maintained as a separate and independent claim."   *Fava*, 2019 WL 133269, at *7.   In the face of this authority, Mr. Lucero presents no legal basis to support a separate and independent negligence claim.   Accordingly, his negligence claim must be dismissed.

Although he does not assert a separate claim of negligent misrepresentation, Mr. Lucero includes in Count IV the allegation that "Travelers misrepresented material facts about the insurance coverage and about available coverage to Leonard Lucero."   *Id.* ¶ 57.   To state a claim of negligent misrepresentation under New Mexico law, a plaintiff must allege: "(1) the defendant made a material misrepresentation to plaintiff, (2) the plaintiff relied upon the misrepresentation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff."   *Raja*, 305 F. Supp. 3d at 1253 (quoting *Robey v. Parnell*, 392 P.3d 642, 652 (N.M. Ct. App. 2017)).   Mr. Lucero fails to allege any of these four elements.   Specifically, Mr. Lucero does not allege facts anywhere in the Complaint indicating what material misrepresentations were made, who made them, how he relied on them, or why he was justified in doing so.   *See id.*   Accordingly, to the extent that Mr. Lucero intended to include in Count IV a claim for negligent misrepresentation, that claim must be dismissed.

V.    Leave to Amend

Mr. Lucero includes in his response a one-sentence request for leave to amend his

Complaint, should the Court find that it "lacks sufficient specific factual allegations."   Doc. 15

at 21-22.   This request is not appropriate.   *See Brooks v. Mentor Worldwide LLC*, 985 F.3d

1272, 1282 (10th Cir. 2021).   By failing to file a motion for leave to amend and failing to attach

a proposed amended complaint to such motion, Mr. Lucero has failed to comply with either Rule

15 of the Federal Rules of Civil Procedure or District of New Mexico Local Rule 15.1.   *See id.*

The Tenth Circuit has "long held that bare requests for leave to amend do not rise to the

status of a motion and do not put the issue before the district court." *Id.* at 1283.   "Such shots in

the dark do not request an order contemplated under the rules, do not state any particular grounds

for the request, and lack basis." *Id.* (citation omitted).   Mr. Lucero's "single sentence" thus is

not "a cognizable motion," and the Court exercises its discretion to deny his request.   *Id.*

Nonetheless, the Court will give Mr. Lucero 45 days to file a motion for leave to amend,

attaching a proposed amended complaint to such motion.   If Mr. Lucero chooses to file a

motion for leave to amend, and Travelers does not consent in writing thereto, it will be "within

the discretion of the Court to grant or deny leave to amend."   *Foman v. Davis*, 371 U.S. 178,

182 (1962).   While the Court should "freely give leave when justice so requires," Fed. R. Civ.

P. 15(a)(2), the Court may refuse leave to amend "upon a showing of undue delay, bad faith or

dilatory motive, failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party, or futility of amendment."   *Castleglen, Inc. v. Resolution Tr. Corp.*, 984

F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman*, 371 U.S. at 182).

Notably, "[a] proposed amendment is futile if the complaint, as amended, would be

subject to dismissal." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d

1224, 1230 (10th Cir. 2017) (quoting *Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015)).

In drafting a proposed amended complaint, if any, Mr. Lucero is reminded that this case has been

removed to federal court.    Accordingly, his claims must be sufficient under the federal pleading

standards outlined above.    Further, if his proposed amended complaint contains the same

deficiencies identified herein, his motion for leave to amend will be denied.    Finally, if Mr.

Lucero does not timely file a motion to amend, this case will be dismissed.

## CONCLUSION

Mr. Lucero's claim for breach of contract is time-barred by an enforceable time-to-sue

provision in the Policy.    For this reason, his claim for breach of contract and his claim for

declaratory judgment must be dismissed.    Mr. Lucero's additional claims for bad faith, violation

of the NMUIPA, violation of the NMUPA, and negligence must be dismissed for failure to state

a claim upon which relief can be granted.    Mr. Lucero will not be given leave to amend but he

will be given 45 days within which to file a Rule 15 motion for leave to amend.

**IT IS THEREFORE ORDERED** that Travelers Commercial Insurance Company's

Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 11] is

GRANTED, consistent with this Memorandum Opinion and Order.

DATED this 16th day of December 2022.

_____
MARTHA VÁZQUEZ
Senior United States District Judge